IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| HAROLD RYALS,<br>        **Plaintiff,** | §<br>§<br>§ | |
| **v.** | §<br>§<br>§ | |
| EL PASO COUNTY,<br>SHERIFF RICHARD<br>WILES, JAIL<br>COMMANDER<br>WISNESKI, CORPORAL<br>MORALES, OFFICER G.<br>MARTINEZ, DEPUTY<br>BEARD, DEPUTY<br>GUERRO, LT. JONES,<br>JAIL COMMANDER<br>VARGAS, and NURSE<br>PEAREN,<br>        **Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-13-CV-289-PRM** |

## <u>MEMORANDUM OPINION AND</u>
## <u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

On this day, the Court considered Defendants Corporal Morales

("Morales"), Officer G. Martinez ("Martinez"), Lt. Jones ("Jones"),

Deputy Beard ("Beard"), Deputy Guerro ("Guerro"), and Commander

Vargas's ("Vargas") "Motion to Dismiss Plaintiff's Amended Complaint

Under Rule 12(b)" (ECF No. 139) [hereinafter "Defendant Morales's

Motion"], filed on April 1, 2015; Defendant Nurse Pearen's ("Pearen")

"Rule 12(b)(6) Motion to Dismiss" (ECF No. 137) [hereinafter "Defendant Pearen's Motion"], filed on March 31, 2015; Plaintiff Harold Ryals's "Response to Defendants' Guerro, Lt. Jones, Jail Commander Vargas and Deputy Beard['s] Motion to Dismiss (DOC#139)" (ECF No. 142) [hereinafter "Response to Defendant Morales's Motion"], filed on April 15, 2015; Plaintiff's "Response to Defendant Nurse Pearen's Motion to Dismiss (DOC#137)" (ECF No. 141) [hereinafter "Response to Defendant Pearen's Motion"], filed on April 14, 2015; and Defendant Pearen's "Reply to Plaintiff's Response in Support of Her Rule 12(b)(6) Motion to Dismiss" (ECF No. 143) [hereinafter "Defendant Pearen's Reply"], filed on April 21, 2015, in the above-captioned cause.  After due consideration, the Court is of the opinion that Defendant Morales's Motion should be granted in part and denied in part and that Defendant Pearen's Motion should be granted in part and denied in part for the reasons that follow.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an inmate with the Texas Department of Criminal Justice who is currently housed in the Coffield Unit in Tennessee

Colony, Texas.[1]  Pl.'s Am. Compl. 2, ECF No. 134.  Proceeding *in forma*

*pauperis* and pro se, Plaintiff filed his Original Complaint on November

6, 2013.  ECF Nos. 1, 6.  Therein, he alleged that Defendants El Paso

County, Sheriff Richard Wiles ("Wiles"), Jail Commander Wisneski

("Wisneski"), Corporal Morales, and Officer G. Martinez  violated his

constitutionally protected rights through various acts and omissions—

most notably when Defendants Morales and Martinez allegedly

assaulted Plaintiff on August 30, 2013 ("August 2013 Assault").  Compl.

1, ECF No. 6-1.  On September 22, 2014, Plaintiff filed his

---

[1] The instant action arises from events that occurred while Plaintiff was housed at the El Paso County Jail Annex and the El Paso County Downtown Detention Center in El Paso, Texas.  Pl.'s Am. Compl. 2.  Whether Plaintiff was a pretrial detainee and/or a post-conviction inmate when the events in question took place is the subject of some debate between the parties in this case.  In Plaintiff's First Amended Complaint, Plaintiff referred to himself as a pretrial detainee.  *See* First Am. Compl. 11.  However, in Plaintiff's Response to Defendant Morales's Motion, Plaintiff avers that he was both a pretrial detainee and post-trial inmate, entitling him to the protections of both the Eighth and Fourteenth Amendments.  Resp. to Def. Morales's Mot. 9.  Plaintiff's Response cites El Paso County public records as proof of his status; *id.*, however, he does not attach these records to his Second Amended Complaint (nor does his Second Amended Complaint address this issue at all).  Because Plaintiff's pleadings do not allege that he was a post-conviction inmate, the Court will continue to follow Plaintiff's representation from his First Amended Complaint that he was a pretrial detainee at the time the events in question took place.  Although this distinction determines whether the Eighth or Fourteenth Amendment applies to his claims, the standard is the same regardless of which amendment is applicable.  *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)  (noting that although the constitutional rights of a pretrial detainee do not derive from the Eighth Amendment, "'a pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner.'" (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

"Supplemental Complaint" [hereinafter "First Amended Complaint"] (ECF No. 87), which added Defendants Jones, Beard, Guerro, Vargas, and Pearen to this action.  Plaintiff's First Amended Complaint also added facts related to a second alleged assault against Plaintiff committed by Defendants Beard and Guerro on April 2, 2014 ("April 2014 Assault").  First Am. Compl. 14.

On October 3, 2014, Defendants El Paso County, Martinez, Morales, Wiles, and Wisneski filed their "Motion to Dismiss under Rule 12(b) and all Defendants' Motion to Dismiss Under Rule 12(b)" [hereinafter "El Paso County's Motion to Dismiss"] (ECF No. 90).  At the time that El Paso County's Motion to Dismiss was filed, Defendants Jones, Beard, Guerro, Vargas, and Pearen had not yet been served.  El Paso County's Mot. to Dismiss 1.  Thus, the Court's "Order on Motion to Dismiss" (ECF No. 103), filed on November 24, 2014, did not adjudicate all of the claims against all of the parties.  Rather, the Court's Order adjudicated the claims related to the August 2013 Assault.[2]  In that

_____

[2] The Court's Order on Motion to Dismiss also adjudicated other claims unrelated to either of the alleged assaults.  For example, Plaintiff brought claims related to his confinement to a single cell and an assault allegedly committed on him by other inmates.  Both of those claims were dismissed for failure to state a claim.  Order on Mot. to Dismiss 12–18.

Order, the Court dismissed Plaintiff's claims against Defendants El Paso County, Wiles, and Wisneski.  Order on Mot. to Dismiss 23–26. However, the Court denied El Paso County's Motion to Dismiss as to Plaintiff's claims against Defendants Morales and Martinez.  *Id.* 22–23.

On March 17, 2015, Plaintiff filed his "Amended Complaint" [hereinafter "Second Amended Complaint"] (ECF No. 134), with the assistance of his recently secured counsel.[3]  Plaintiff's Second Amended Complaint reasserts certain claims against Defendants El Paso County, Wiles, and Wisneski that were previously dismissed by the Court. Second Am. Compl. 2–3.  For example, Plaintiff's Second Amended Complaint alleges that El Paso County is liable to Plaintiff in relation to both assaults because it failed to properly train and supervise its employees and it failed to adopt policies against the excessive use of force.[4]  *Id.* 12.

---

[3] Plaintiff's counsel filed their entries of appearance on the Court's docket on December 16, 2014.  ECF Nos. 118, 120.

[4] The Court dismissed Plaintiff's claims against Defendant El Paso County because (1) there is no *respondeat superior* in § 1983 cases; (2) Plaintiff failed to establish that an official policy promulgated by Defendant El Paso County led to his assault; (3) Plaintiff did not allege facts showing that the failure to adopt a policy regarding excessive force was the result of Defendant El Paso County's intentional choice; and (4) Plaintiff did not allege facts to show that Defendant El Paso County should have been aware that serious injury would result from failing to train its employees on the use of force.  *See* Order on Mot. to Dismiss 23–25.  The Court further

Plaintiff's Second Amended Complaint also brings new claims in relation to the August 2013 Assault that have not yet been adjudicated—namely, the claims against Defendant Jones.  Plaintiff avers that Defendant Jones, "who was in charge of the Defendants and guards, was aware and may have witnessed a portion of the incident yet failed to take any correction action whatsoever." *Id.* 6–7.  Moreover, Defendant Jones also "attempted to discourage Plaintiff from filing a complaint [about the August 2013 Assault] by threatening to retaliate against Plaintiff if he did so." *Id.* 7.

Finally, Plaintiff's Second Amended Complaint provides the following factual assertions regarding the April 2014 Assault.  The incident started when Defendant Beard allegedly accosted Plaintiff after Plaintiff inquired about his medications. *Id.*  Defendant Beard then attempted to isolate Plaintiff in his cell by asking the other inmates who shared a cell with Plaintiff to move to another cell. *Id.*  Plaintiff avers that he feared the officers due to his previous assault and that due to this fear Plaintiff attempted to enter the dayroom,

---

dismissed claims against Defendants Wiles and Wisneski because Plaintiff did not allege any facts to suggest that either defendant violated the Constitution through his own actions. *Id.* 22–23.

"which was more visible to other potential witnesses." *Id.* He also requested to speak to Defendant Beard's supervisor. *Id.*

Following this request, Defendant Guerro grabbed Plaintiff, and Plaintiff did not resist. *Id.* Defendant Guerro and Beard then "slammed [Plaintiff] against the glass wall, while holding Plaintiff's hands behind his back." *Id.* "Plaintiff was lifted up by his hand-cuffs and slammed into another wall, then yanked out by his hand-cuffs."[5] *Id.*

Plaintiff was then removed to the hallway where Defendants Guerro and Beard "slammed [Plaintiff] yet again into a hallway wall and lifted [him] off his feet." *Id.* 8. While in the hallway, Defendants Guerro and Beard "slammed" Plaintiff to the ground, "with his hands still shackled beneath his back." *Id.* Plaintiff was then "lifted to his knees, . . . [and] slammed against a bench, causing extreme pain to his knees." *Id.* During the course of this alleged attack, Defendant Guerro also "yanked and twisted the handcuffs behind plaintiff's back, causing significant cuts, swelling and bruising to Plaintiff's wrists." *Id.*

---

[5] Plaintiff does not allege facts indicating when handcuffs were placed on him.

Plaintiff alleges that Defendant Pearen, a nurse and Plaintiff's treating medical provider, witnessed the incident "yet failed to report the commission of this felony assault." *Id.* He also alleges that Defendant Pearen "aided and abetted the attack by allowing the attack to continue until she subjectively felt Plaintiff had suffered enough. Only then did she tell the guards to stop." *Id.* Finally, Plaintiff alleges that Defendant Pearen allegedly misrepresented the facts surrounding the April 2014 Assault and the injuries that Plaintiff suffered as a result of that attack in a subsequent report. *Id.* Specifically, Defendant Pearen represented that "Plaintiff suffered a superficial wound to his head from the attack, despite Plaintiff sustaining other significant injuries." *Id.* She also represented "that Plaintiff himself inflicted his injuries by banging his head against the wall, despite being some distance away and not being at a visual angle to actually witness what was occurring." *Id.* Moreover, Plaintiff avers that Defendant Pearen "allowed these misrepresentations to be published in the Grievance Report." *Id.* 9.

Plaintiff contends that all defendants have violated his right to be free from excessive force and that defendants have conspired to deprive

him of his rights in violation of § 1985. *Id.* 11, 13. In their Motions, Defendants Morales, Martinez, Jones, Beard, Guerro, Vargas, and Pearen argue that the claims against them should be dismissed because Plaintiff fails to state a claim upon which relief can be granted.[6] Def. Morales's Mot. 3; Def. Pearen's Mot. 4.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Davila v. United States*, 713 F.3d 248, 255 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). While a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, *Cuvillier v. Taylor*,

---

[6] Notably, none of the defendants pleaded qualified immunity as a defense in the Motions presently before the Court. Defendants Wiles, Wisneski, Morales, and Martinez asserted qualified immunity as a defense in their previously filed motion to dismiss. *See* Def. El Paso County's Mot. to Dismiss 3. Because "qualified immunity is a defense, the burden of pleading it rests with the defendant." *Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (quoting *Gomez v. Toldedo*, 446 U.S. 635, 640 (1980) (internal quotation mark omitted)). Accordingly, the Court will not determine whether any of the defendants are entitled to qualified immunity.

503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted), it must state "more than labels and conclusions": "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Thus, at this stage, the Court must determine whether the well-pleaded facts in Plaintiff's Second Amended Complaint, taken as true and viewed in the light most favorable to Plaintiff, are sufficient to "move [his] claim 'across the line from conceivable to plausible.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).

## III.  ANALYSIS

Plaintiff claims that defendants have violated the Fourteenth Amendment's prohibitions of excessive force.[7]  Second Am. Compl. 9, 11.

---

[7] Plaintiff also claims that defendants have violated the Fourth and Eighth Amendments, which also prohibit the use of excessive force.  Second Am. Compl. 9, 11.  However, as discussed already in this Order and in the Court's Order on Motion to Dismiss, the Eighth Amendment does not apply to Plaintiff's excessive force claim.  *See* Order on Mot. to Dismiss 10–11.  The Fourth Amendment is similarly inapplicable to Plaintiff's claims of excessive force:  "While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by

Plaintiff also brings conspiracy claims against defendants pursuant to 42 U.S.C. § 1985. *Id.* 13. Before turning to Plaintiff's conspiracy and Fourteenth Amendment claims, the Court will first address the claims that Plaintiff reasserts against Defendants El Paso County, Wiles, and Wisneski.

### A.   Reconsideration of Claims Against Defendants El Paso County, Wiles, and Wisneski

Although Plaintiff has not filed a motion asking the Court to reconsider its dismissal of Plaintiff's claims against Defendants El Paso County, Wiles, and Wisneski, the Court will nonetheless construe Plaintiff's Second Amended Complaint as a motion to reconsider its prior ruling because it reasserts claims that have already been dismissed. Because the Court's Order on Motion to Dismiss adjudicated some, but not all, of Plaintiff's claims, it constituted an interlocutory order subject to reopening and reconsideration at any time prior to final judgment pursuant to the Court's inherent powers. *See Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985) ("Interlocutory orders and judgments are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such

---

the due process clause of the Fifth or Fourteenth Amendments." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998).

relief from them as justice requires." (quoting 7 Moore's Federal Practice ¶ 60.20 at 60–170 (2d ed. 1985)) (internal quotation marks omitted)).  Federal Rule of Civil Procedure 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

However, the Supreme Court has noted that although "[a] court has the power to revisit prior decisions of its own . . . courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).  Plaintiff makes no legal arguments pertaining to why the Court should allow Plaintiff to reassert his previously dismissed claims. Plaintiff has not alleged any error (clear or otherwise) in the Court's ruling.  Nor does Plaintiff claim that failing to include the previously dismissed defendants would result in manifest injustice.  Accordingly, the Court declines to revisit its prior ruling.  Defendants El Paso

County, Wiles, and Wisneski are thus, once again, dismissed from the above-captioned cause.

## B.     Section 1985 Conspiracy Claims

The Court will next turn to Plaintiff's § 1985 conspiracy claims. In his Second Amended Complaint, Plaintiff asserts that all defendants "conspired against Plaintiff to deprive him of his rights secured by the Constitution and the laws of the United States, against excessive use of force" in violation of 42 U.S.C. § 1985.  Second Am. Compl. 13.  Section 1985 bars three types of conspiracies.  The first two types of conspiracies barred by § 1985—(1) conspiracies to prevent officers from performing their official duties[8] and (2) conspiracies to deter any party, witness, or juror from participating in a court proceeding—are inapplicable to the instant case.  The third type of conspiracy barred by the statute is a conspiracy where two or more persons "go in disguise on the highway or on the premises of another, for the purpose of depriving . . . any person or class of persons of the equal protection of laws, of equal privileges and immunities under the laws" or conspire "to prevent

---

[8] Section 1985(1) provides for liability where:

   [T]wo or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof . . . .

by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in any legal manner." 42 U.S.C. § 1985(3). Again, the types of conspiracies barred by § 1985(3) are not applicable to the instant case. Therefore, the Court is of the opinion that Plaintiff fails to state a claim against any defendant for a violation of § 1985.

## B.   Claims Against Defendant Jones

Next, the Court will consider Plaintiff's allegations against Defendant Jones in relation to the August 2013 Assault. Plaintiff alleges that Defendant Jones (1) was in charge of the officers who assaulted him, (2) may have witnessed the August 2013 Assault, and (3) discouraged Plaintiff from filing a grievance regarding the August 2013 Assault by threatening to retaliate against him if he did so. Second Am. Compl. 6–7. The Court will address each claim in turn to determine whether Plaintiff has stated a claim against Defendant Jones.

Regarding his first allegation that Defendant Jones was in charge of officers and guards, Plaintiff fails to state a claim. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, it is not enough for Plaintiff to claim that Defendant Jones was in charge of the Defendants who allegedly assaulted him.

Plaintiff next alleges that Defendant Jones "may have witnessed a portion of the incident yet failed to take any corrective action." Second Am. Compl. 7. Presumably, Plaintiff is attempting to allege that Defendant Jones is liable as a bystander. *See Harris v. Chanclor*, 537 F.2d 203, 206 (5th Cir. 1976) ("[A] supervisory officer is liable under [§] 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence."). Bystander liability may be established where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). Although Plaintiff's factual allegations regarding Defendant Jones's involvement in the August 2013 Assault are scant, the Court finds that by stating that Defendant Jones may

15

have witnessed the August 2013 Assault[9] and failed to act, Plaintiff has stated a claim for bystander liability.

Finally, Plaintiff claims that Defendant Jones discouraged Plaintiff from filing a grievance regarding the August 2013 Assault by threatening to retaliate against him if he did so.  Second Am. Compl. 7. There is no allegation that Defendant Jones carried out his threatened retaliation.  The "general rule [is] that 'mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations.'" *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995) (second alteration in original).  This is because "[a] section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation." *Lamar v. Steele*, 698 F.2d 1286, 1286 (5th Cir. 1983) (per curium); *see also Woods v. Smith*, 60 F.3d. 1161, 1166 (5th Cir. 1995) ("To state a claim of retaliation an inmate must allege the violation of a specific constitutional right . . . .").  Thus, threats to retaliate against a plaintiff for filing a complaint do not

---

[9] Plaintiff alleges that Defendants Martinez and Morales repeatedly punched him and kicked him while he was in handcuffs and lifted him up by his handcuffs. Second Am. Compl. 6.  In its Order on Motion to Dismiss, the Court concluded that "[n]o reasonable person could believe that punching and kicking an inmate who is in handcuffs, restrained, and on the floor is constitutionally protected."  Order on Mot. to Dismiss 23.  It follows that had Defendant Jones witnessed the incident, he would have known that Plaintiff's constitutional rights were being violated.

16

establish a claim for retaliation for purposes of § 1983.  *See Peterson v. Peshoff*, 216 F.3d 1079, at *1 (5th Cir. 2000) (unpublished) ("[Plaintiff's] allegations that he was threatened for filing grievances do not state a claim."); *see also Hunter v. Byrd*, No. 1:05CV25-RHW, 2007 WL 1308810, at *2 (S.D. Miss. May 3, 2007) ("[T]he only specific example of retaliation given by Plaintiff . . . is that Defendant John threatened 'to put him in the hole' if Plaintiff filed a lawsuit or kept complaining. . . . Plaintiff admitted that Defendant John never had him put 'in the hole'; therefore, there was no retaliatory adverse act.").  Accordingly, because Plaintiff does not allege that the threat resulted in a constitutional deprivation, Plaintiff fails to state a claim for retaliation against Defendant Jones.

## C.   Claims Against Defendants Beard and Guerro

The Court will now address the claims that Plaintiff alleges against Defendants Beard and Guerro.  Plaintiff alleges that Defendants Beard and Guerro violated his Fourteenth Amendment right to be free from excessive force when they slammed him against a wall and a bench more than once and twisted his handcuffs causing him pain and injury.  Second Am. Compl. 7–8.  It is well established that

17

prison officials may not use excessive physical force against inmates (and pretrial detainees). *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993) (applying the Eighth Amendment excessive force framework to pretrial detainees). However, the protections of the Eighth Amendment (and the Fourteenth Amendment) are triggered only when a prison official wantonly or unnecessarily inflicts pain on an inmate. *Whitley v. Albert*, 475 U.S. 312, 322 (1986).

"Where a prison security measure is undertaken to resolve a disturbance . . . the question . . . ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Id.* at 321–22 (internal quotation marks and citation omitted). Several factors are relevant to this inquiry, including:

1. the extent of the injury suffered;

2. the need for the application of force;

3. the relationship between the need and the amount of force used;

4. the threat reasonably perceived by the responsible

officials; and

5. any efforts made to temper the severity of a forceful

response.

*Hudson v. McMillan*, 962 F.2d 522, 523 (5th Cir. 1992).  Courts must

also consider the fact that the official "'may have had to act quickly and

decisively.'" *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998)

(quoting *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993)).  The

official is therefore "entitled to wide-ranging deference." *Id.*

Considering the above-listed factors (and reading the facts in the

light most favorable to the Plaintff), it does not appear that force was

applied in a "good faith effort to maintain or restore discipline."

*Whitley*, 475 U.S. at 322.  While Plaintiff may have initially been

noncompliant with Defendant Beard and Guerro's orders, there is no

indication that he resisted their use of force.  However, Defendants

Beard and Guerro continued to use force.  It also does not appear that

Defendants Beard and Guerro would have perceived any significant

threat from Plaintiff.  Thus, given that Plaintiff caused little to no

disruption, it appears that the amount of force used,[10] which included several incidents of slamming Plaintiff against the wall, floor, and a bench, was not necessary.

Moreover, the Fifth Circuit has upheld the denial of qualified immunity in other cases that involved slamming a plaintiff against a wall.[11] *See, e.g., Rankin*, 5 F.3d at 105 (upholding a denial of qualified immunity in a case where an officer placed an inmate in a "'compliance hold,' slammed him against a wall and the jail's floor, handcuffed him and 'stomped' on his back and legs"). Another court has also found that actions such as slamming an arrestee into furnishings establish an excessive force claim. *See Smith v. Packnett*, No. CIV A 507CV175WHBLRA, 2008 WL 4849627, at *5 (S.D. Miss. Nov. 6, 2008)

---

[10] Plaintiff's injuries (in addition to his description of the incident itself) suggest that significant force may have been applied. Plaintiff claims that he suffered injury from the assault, including abrasions, bruising, and a laceration to his head. Second Am. Compl. 9. He also alleges that he suffered "long term or permanent nerve damage to his hands and wrists and chronic back pain" as a result of the April 2014 Assault. *Id.* Although the extent of his injury is disputed, the Court must take Plaintiff's factual assertions as true.

[11] Although the instant case does not involve an assertion of qualified immunity, cases involving the denial of qualified immunity are nonetheless instructive in determining whether Plaintiff has stated a claim upon which relief can be granted as the first step in the qualified immunity analysis requires courts to determine "whether the plaintiff has alleged a violation of a constitutional right." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) (quoting *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)) (internal quotation marks omitted)

(finding a violation of a clearly established right where a plaintiff alleged "that, even though she did not resist arrest, [defendant] forcefully grabbed her, spun her around, tightly handcuffed her, and twisted her arms up behind her back. . . . [and] slammed her into a row of chairs and into various other furnishings and door jams").

In addition, the act of twisting and yanking handcuffs, which Defendants Beard and Guerro are alleged to have done to Plaintiff, also suggests that force may have been applied maliciously or wantonly. While simply placing handcuffs on a person too tightly alone does not amount to excessive force, *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001), courts have found that twisting handcuffs may constitute excessive force. For example, in *Fennell v. Quintela*, 393 F. App'x 150 (5th Cir. 2010), the plaintiff alleged that one of the defendants ordered him "to place his arms through the shower stall's food tray slot so that she could remove his handcuffs." *Id.* at 152. That defendant, "however, did not simply remove [plaintiff's] handcuffs; instead, she grabbed his wrists and twisted them." *Id.* The Fifth Circuit concluded that, if proven, the plaintiff's version of events "would allow a reasonable jury

to find that [the defendants] used excessive force in violation of the Constitution." *Id.* at 156.

Finally, the fact that force is applied while an inmate is restrained is a factor that suggests the use of force was unreasonable. For example, in one nonprecedential case, the Fifth Circuit concluded that the plaintiff's evidence that defendants struck him without provocation while he was in restraints "gives rise to genuine fact issues as to whether the force [defendants] applied was excessive and whether their conduct was objectively reasonable." *Watts v. Smart*, 328 F. App'x 291, 292, 293–94 (5th Cir. 2009); *see also Kitchen*, 759 F.3d at 477–78 ("[T]he four inmates' affidavits assert that the detention officers kicked, choked, and stomped on the deceased even after he was already restrained, subdued, and no longer a threat. . . . It is sufficient that a reasonable jury could believe, based on these inmates' potential testimony at trial, that the detention officers' actions were motivated by a purpose to cause harm.").

Taking Plaintiff's factual assertions as true, as the Court must, the Court concludes that Defendants Beard and Guerro may have acted

wantonly and maliciously in their interaction with Plaintiff.[12]   Although some force may have been required to address Plaintiff's noncompliance with their orders, the amount of force they allegedly used appears excessive in comparison to the need for it, especially considering that the use of force continued even after Plaintiff was restrained and that he did not resist.  Second Am. Compl. 7–8.  Furthermore, Defendants' yanking and twisting of Plaintiff's handcuffs suggests that Defendants were not merely attempting to control the situation, but were instead acting wantonly to inflict pain on Plaintiff.  Accordingly, the Court is of the opinion that Plaintiff has stated a claim against Defendants Beard and Guerro for a violation of a constitutional right.

## C.   Claim Against Defendant Vargas

Plaintiff also brings a claim against Defendant Vargas.  Plaintiff alleges that "the intentional conduct and/or deliberate indifference of Defendant[] . . . Vargas . . . towards the excessive use of force against Plaintiff without due process was not privileged or justified under state or federal law."  Second Am. Compl. 10.  However, Plaintiff alleges *zero* facts regarding Defendant Vargas in his Second Amended Complaint.

---

[12] As the Court noted in its previous Order, the Court is mindful that there could be a difference between what Plaintiff alleges and what Plaintiff ultimately proves.

The Court can only assume that given Defendant Vargas's position as a jail commander, Plaintiff intends to hold Defendant Vargas vicariously liable for the actions of the other officers.  However, as already noted above, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has not pleaded facts that show Defendant Vargas violated the Constitution through his own individual actions.  Accordingly, Plaintiff's claim against Defendant Vargas is dismissed.

### D.   Claims Against Defendant Pearen

Finally, Plaintiff brings several claims against Nurse Pearen for her actions and omissions during and following the April 2014 Assault.  First, Plaintiff alleges that Defendant Pearen witnessed the April 2014 Assault and failed to report it to authorities.  Second Am. Compl. 8.  Second, Plaintiff alleges that Defendant Pearen aided and abetted the attack by allowing it to continue until she subjectively felt that he had suffered enough; *id*, he also suggests in his Response to Defendant Pearen's Motion that this action by Defendant Pearen also constituted

deliberate indifference to his medical needs.  Resp. to Def. Pearen's Mot.
5 (noting that Defendant Pearen's actions are akin to actions that would
"clearly evidence a wanton disregard for any serious medical needs").
Third, Plaintiff claims that Defendant Pearen misrepresented the April
2014 Assault in her report by stating that Plaintiff caused his own
injuries despite not having witnessed it from a close angle.  *Id.*

      Before turning to each of Plaintiff's claims against Defendant
Pearen, the Court will address the inconsistencies in Plaintiff's factual
allegations against Defendant Pearen.  Plaintiff alleges that Defendant
Pearen witnessed the assault and that she "allow[ed] the attack to
continue until she subjectively felt Plaintiff had suffered enough."  *Id.*
However, Plaintiff also alleges that Defendant Pearen misrepresented
that Plaintiff himself inflicted his injuries by banging his head against
the wall, "despite being some distance away and *not being at a visual
angle to actually witness what was occurring.*"  *Id.* (emphasis added).
Thus, Plaintiff alleges that Defendant Pearen both witnessed the
assault and did not witness the assault.

      Federal Rule of Civil Procedure 8(d)(2) allows a plaintiff to "set out
2 or more statements of a claim or defense alternatively or

hypothetically, either in a single count or defense or in separate ones."
Some courts have interpreted this rule to also allow a plaintiff to plead
contradictory or inconsistent facts. *See, e.g.*, *Lacey v. Maricopa Cnty.*,
693 F.3d 896, 918 n.10 (9th Cir. 2012) (citing Fed. R. Civ. P. 8 for the
proposition that pleading alternative facts is permissible). However,
courts have also held that a plaintiff may plead inconsistent facts only
when he is legitimately in doubt about the facts in question. *See, e.g.*,
*Am. Intern. Adjustment Co. v. Galvin*, 86 F.3d 1445, 1461 (7th Cir.
1996).

In this case, Plaintiff does not state whether he is pleading
alternative claims; nor has he averred that he is legitimately in doubt
about the facts in question. Nonetheless, because the Court finds it
plausible that Plaintiff could be in doubt about some of the facts in
question, including whether Defendant Pearen witnessed all or only
some part of the April 2014 Assault, the Court will construe Plaintiff's
Second Amended Complaint as pleading alternative claims for relief.
Accordingly, the Court will accept all of his factual assertions as true,
despite the inconsistencies. The Court will now address each claim
against Defendant Pearen in turn.

### 1.   Failure to Report Claim

Plaintiff first asserts that Defendant Pearen violated Texas state law by not reporting the April 2014 Assault to proper authorities. Second Am. Compl. 8 & n.1.  Specifically, Plaintiff contends that Defendant Pearen violated Texas Penal Code § 38.171, which criminalizes the failure to report a felony in cases where a person "observes the commission of a felony . . . in which serious bodily injury or death may have resulted" and "fails to immediately report the commission of the offense."  In order to obtain relief pursuant to § 1983, a plaintiff must "show a violation of *the Constitution or of federal law*." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252 (5th Cir. 2005) (emphasis added).  A "violation of state law alone does not give rise to a cause of action under [§] 1983." *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982).  Thus, while Defendant Pearen *may* have violated state law by failing to report the April 2014 Assault, her alleged inaction does not give rise to liability pursuant to § 1983.[13]

---

[13] Moreover, to the extent that Plaintiff is attempting to assert a private cause of action on the basis of a state criminal statute, none exists. *See A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("[T]he Penal Code does not create private causes of action . . . .'" (alteration in original) (internal quotation marks and citation omitted)).

### 2.   Bystander Liability

Plaintiff also asserts that Defendant Pearen aided and abetted the attack by allowing it to continue until she subjectively felt that Plaintiff had enough and only then stopped Defendants.  Second. Am. Compl. 8. The Court understands Plaintiff to be arguing that Defendant Pearen is subject to bystander liability for her failure to intervene to timely stop the April 2014 Assault.[14]  As already discussed, bystander liability may be established where an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Kitchen*, 759 F.3d at 480.

Plaintiff avers that Defendant Pearen "allowed the attack to continue until she subjectively felt Plaintiff had suffered enough.  Only then did she tell the guards to stop." Second Am. Compl. 8.  Although

---

[14] In her Motion, Defendant Pearen argues that Plaintiff has not pleaded bystander liability and thus is not entitled to proceed upon a theory of bystander liability.  Def. Pearen's Mot. 10 n.2.  However, although Plaintiff did not specifically use the term "bystander liability," he alleged facts indicating that Defendant Pearen witnessed the April 2014 Assault and yet did not immediately act to stop the assault.  These facts clearly indicate Plaintiff's intention to bring a bystander liability claim even though he did not use those words. Moreover, Defendant Pearen was able to identify the claim as potentially being a bystander liability claim and present her arguments against such liability.  Accordingly, the Court will determine whether Plaintiff states a claim of bystander liability against Defendant Pearen.

Defendant Pearen did ultimately stop the assault, according to Plaintiff's allegations, she did so only after he suffered significant injuries. *Id.* 8–9. Accepting these allegations as true, the Court finds that Plaintiff has stated a claim for bystander liability against Defendant Pearen."[15]   *Kitchen*, 759 F.3d at 480.

### 3.   Deliberate Indifference Claims

On the basis of the same facts, Plaintiff next asserts that Defendant Pearen exhibited deliberate indifference by "not immediately stopping the situation, rather stopping it when 'he [Plaintiff Ryals] had suffered enough.'" Resp. to Def. Pearen's Mot. 5 (alteration in original); *see also id.* (asserting that Defendant Pearen was acting with "cold deliberate indifference" and a "willful or wanton disregard for his safety

---

[15] Plaintiff also suggests that Defendant Pearen is liable not just for her inaction as a bystander but also for excessive force. *See* Resp. to Def. Pearen's Mot. 4 ("The facts alleged in the [Second] Amended Complaint show that Nurse Pearen had sufficient personal participation to be more than a mere bystander. She is part and parcel of the excessive force claim against Plaintiff."). However, in order to prevail on an excessive force claim (as opposed to a bystander liability claim), a plaintiff must prove that the defendant being sued actually applied some force. *See, e.g.,* *Breidel v. Harris Cnty. Sheriff's Office*, No. 4:13-CV-23, 2014 WL 3891693, at *8 (S.D. Tex. Aug. 6, 2014) (granting summary judgment to defendants because the record was "devoid of any allegations or evidence that Defendants used excessive force against [plaintiff]"). Here, Plaintiff has not alleged that Defendant Pearen applied any force whatsoever. Thus, he fails to state a claim against her for excessive force.

and her Hippocratic oath").  Deliberate indifference claims brought by incarcerated plaintiffs typically fall into two categories:  (1) claims against medical professionals or other officials for deliberate indifference to serious medical needs and (2) claims against officials for failing to protect an inmate from a known safety risk.  *See, e.g.*, *Hare*, 74 F.3d at 650 (holding that the deliberate indifference test applies to allegations involving denial of medical care and failure to protect from harm).  Although Plaintiff's claim does not fit neatly in either category of deliberate indifference claims, the Court understands Plaintiff to be arguing that Defendant Pearen was deliberately indifferent to his serious medical needs.

"The Eighth Amendment [as well as the Fourteenth Amendment] requires that inmates receive 'adequate medical care.'"  *Coleman v. Sweetin*, 745 F.3d 756, 765 (5th Cir. 2014) (quoting *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013)).  In the medical care context, "[a] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'"  *Easter v.*

*Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  In general, "[a] prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Rogers*, 709 F.3d at 409–10.  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* at 410.  Moreover, "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*." *Id.* (citing *Easter,* 467 F.3d at 464) (emphasis in original) (internal quotation marks omitted).

In this case, Plaintiff has failed to allege facts that show that Defendant Pearen refused to treat him, ignored his complaints, or intentionally treated him incorrectly; nor does the Court find that Defendant Pearen engaged in any conduct that "clearly evince[d] a wanton disregard for Plaintiff's serious medical needs."  Thus, Plaintiff

fails to state a claim for deliberate indifference to his serious medical needs.

### 4.    False Report Claim

Finally, Plaintiff alleges that Defendant Pearen misrepresented the facts surrounding the April 2014 Assault and let these misrepresented facts become part of the report on Plaintiff's grievance. Second Am. Compl. 9.  Again, in order to obtain relief pursuant to § 1983, a plaintiff must show "the deprivation of a right secured by the Constitution or laws of the United States." *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 199 (5th Cir. 1994).  There are several similar, albeit nonbinding, cases that found no violation of the Constitution where an official falsified a report.  For example, in *Barber v. Quarterman*, 437 F. App'x 302 (5th Cir. 2011), the plaintiff claimed that a false report by an official resulted in his transfer to another unit and in denial of parole.  *Id.* at 304.  The Fifth Circuit concluded that these allegations did not "state a claim under § 1983 because [Plaintiff] has identified no constitutional violation."  *Id.*

Several district courts in the Fifth Circuit have also reached the same conclusion in considering whether plaintiffs stated claims

pursuant to § 1983 where they alleged that officials falsified reports in order to cover up assaults. *See, e.g., Ware v. Tanner*, No. 12-2250, 2013 WL 5589506, at *5 (E.D. La. Oct. 10, 2013) ("If any wrongdoings were 'covered up,' this could be a violation of prison regulations or even state law, but there is no showing that it is a violation of any right protected by the Constitution or laws of the United States."); *Potts v. Allen*, No. 9:06cv222, 2007 WL 1655912, at * 6 (E.D. Tex. June 5, 2007) ("[E]ven if the records were falsified through the 'covering up' of the assault, [plaintiff] has not shown that this is a violation of a right secured by the Constitution or laws of the United States."); *Christle v. Magles*, No. 6:05cv344, 2007 WL 1456003, at *5 (E.D. Tex. May 15, 2007) (noting that even if records related to an incident of excessive force were falsified by officers, the plaintiff "has not shown that this is a violation of a right secured by the Constitution or laws of the United States").

Plaintiff makes no allegation that Defendant Pearen's misrepresentation harmed him in any way. Thus, Plaintiff has failed to allege that he was deprived of a right secured by the Constitution or laws of the United States when Defendant Pearen misrepresented the facts surrounding the April 2014 Assault. Because the allegedly false

report did not lead to a constitutional violation, the Court finds that Plaintiff fails to state a claim against Defendant Pearen.[16]

## IV.   CONCLUSION

The Court concludes that Plaintiff has stated a claim for excessive force in violation of the Fourteenth Amendment against Defendants Guerro and Beard.  Moreover, Plaintiff has stated a claim against Defendant Jones and Defendant Pearen for bystander liability. However, all of Plaintiff's other claims against Defendants Jones and Pearen and the claim against Defendant Vargas are dismissed. Moreover, the Court declines to reconsider its prior rulings dismissing Plaintiff's claims against Defendants El Paso County, Wiles, and Wisneski.

**IT IS THEREFORE ORDERED** that Defendants Corporal Morales, Officer G. Martinez, Lt. Jones, Deputy Beard, Deputy Guerro, and Commander Vargas's "Motion to Dismiss Plaintiff's Amended

---

[16] To the extent that Plaintiff is suggesting that Defendant Pearen's false report affected the resolution of his grievance, he similarly fails to state a claim for a violation of § 1983.  There is no constitutionally protected interest in having grievances investigated or resolved to an inmate's satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005).

Complaint Under Rule 12(b)" (ECF No. 139) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Nurse Piper Pearen's "Rule 12(b)(6) Motion to Dismiss" (ECF No. 137) is **GRANTED IN PART** and **DENIED IN PART**.

SIGNED this _____ day of **June, 2015**.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE